UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY HARDY,

                            Plaintiff,    Case No. 24-11270
                                          Honorable Thomas L. Ludington
v.                                        Magistrate Judge Elizabeth A. Stafford

WHITAKER, *et al*.,

                            Defendants.

---

**REPORT AND RECOMMENDATION TO DISMISS
ACTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 41(b)
AND ENJOIN PLAINTIFF FROM FILING NEW ACTIONS**

---

### I.    Introduction

Plaintiff Gregory Hardy, proceeding pro se and in forma pauperis, sues under 42 U.S.C. § 1983, alleging violations of his rights under the Fourth, Eighth, and Fourteenth amendments.  ECF No. 93.  The Honorable Thomas L. Ludington referred the matter to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 10.

Throughout this litigation, Hardy has wasted the resources of the Court and opposing counsel by filing umpteen frivolous motions and unauthorized documents.  He filed those motions and unauthorized documents without regard to court rules or prior orders, repeating the same

violations over and over.  The Court held many status conferences and tried many measures to help Hardy make a course correction without imposing sanctions, but any progress was short-lived.  Finding no hope that Hardy will cease his wasteful litigation practices, the Court now recommends that this case be dismissed with prejudice under Federal Rule of Civil Procedure 41(b), and that Hardy be enjoined from filing new actions.

## II.    Background

For over 20 years, Hardy has been filing complaints in Michigan's federal district courts.  *See, e.g., Hardy v. Southwestern Michigan Assessment Services,* Case No. 1:98-cv-786 (W.D. Mich. Dec. 1, 1998); *Hardy v. Lane*, Case No. 03-73517 (E.D. Mich., Jan. 20, 2004).  As early as 2007, he was an "active litigant in the federal courts in Michigan," with more than three lawsuits dismissed for failure to state a claim.  *Hardy v. Michigan Dep't of Corr*., No. 1:07-cv-607, 2007 WL 2030106, at *2 (W.D. Mich. July 11, 2007).

Courts have consistently found Hardy's endless lawsuits to lack merit.  *See*, *e.g*., *Hardy v. Lansing Police Dep't*, No. 1:20-cv-1224, 2021 WL 12258029, at *2 (W.D. Mich. Mar. 5, 2021) ("Plaintiff has a history of filing

meritless or unsuccessful lawsuits in this Court.")[1]; *Hardy v. Kushman*, No. 09-cv-14825, 2010 WL 3906327, at \*6 (E.D. Mich. Sept. 30, 2010) (dismissing "meritless action" against law firm and attorneys who had represented him pro bono at trial); *Hardy v. City Rescue Mission of Lansing*, No. 1:18-cv-628, 2018 WL 8899332, at \*4 (W.D. Mich. Nov. 14, 2018), *adopted*, 2019 WL 3432435 (W.D. Mich. July 30, 2019) (sua sponte dismissing action under 28 U.S.C. § 1915(e)(2)).

In *Hardy v. City of Flint*, the Honorable Mark A. Goldsmith dismissed a complaint against police officers, 911 operators, and a child protective services agent.  Case No. 22-11351, ECF No. 49 (E.D. Mich. Aug. 7, 2023).  Hardy claimed that those defendants violated his constitutional rights after Hardy called 911 and child protective services to report

---

[1] Citing "*Gregory Hardy v. Community Mental Health, et al.*, 1:16-cv-815 (dismissed for failing to pay filing fee) (ECF No. 11, PageID.65); *Gregory Hardy v. Community Mental Health, et al.*, No. 1:16-cv-1415 (Judgment for defendants); *Gregory Hardy v. Ingham County Jail, et al.*, 1:17-cv-20 (Judgment for defendants); *Gregory Hardy v. East Lansing Police Department, et al.*, 1:17-cv-338 (Judgment for defendants); *Gregory Hardy v. City Rescue Mission of Lansing, et al.*, 1:18-cv-628 (Judgment for defendants); *Gregory Hardy v. Ingham County Jail, et al.*, 1:18-cv-839 (Judgment for defendants); *Gregory Hardy v. Letavis Enterprises, Inc., et al.*, 1:18-cv-1077 (dismissed for failure to state a claim); and, *Gregory Hardy v. Bill Johnston, et al.*, 1:20-cv-649 (case dismissed)."  *Hardy v. Lansing Police Dep't*, 2021 WL 12258029 at \*2.

misconduct by an unnamed neighbor. *Id*. In response to a motion to dismiss, Hardy claimed that the neighbor held him at gunpoint in June 2022. *Id*., ECF No. 29, PageID.220.

Echoing his 2022 lawsuit, Hardy claims here that his constitutional rights were violated after he called 911 in August 2023 to report that an unnamed neighbor was armed with a gun. ECF No. 93, PageID.756-757. Hardy was arrested instead. *Id.* If this Court's report and recommendation (R&R) to dismiss the Genesee County defendants is adopted, his only remaining claim here will be that Flint Police Officer DeShawn Perry arrested him without probable cause. ECF No. 93, PageID.765-766; ECF No. 180.

Hardy began this case by clogging the docket with filings that lacked merit, including several motions to amend or supplement his complaint. The Court denied or struck almost all those filings. *See* ECF No. 34; ECF No. 39; ECF No. 40; ECF No. 41; ECF No. 42; ECF No. 45; ECF No. 46; ECF No. 49; ECF No. 51; ECF No. 53; ECF No. 68; ECF No. 69; ECF No. 73; ECF No. 75; ECF No. 78; ECF No. 113. Trying to get the case on track, the Court held a status conference in April 2025 and solicited the Federal Pro Se Legal Assistance Clinic, headed by Director Barbara Patek, to help him draft an amended complaint. ECF No. 89. Hardy then

4

successfully filed the operative second amended complaint (SAC).  ECF
No. 93.

After accepting Hardy's SAC, the Court entered a June 2025 R&R to
deny defendants' motion to dismiss under Rule 41(b).  ECF No. 110.
Defendants argued that Hardy had "repeatedly failed to follow this Court's
instructions in orders denying and striking his proposed amended
complaints."  *Id*., PageID.848-849 (referring to ECF No. 34; ECF No. 40;
ECF No. 43; ECF No. 45; ECF No. 46; ECF No. 51; ECF No. 73; ECF No.
76; ECF No. 78).  The Court found that "Hardy was at fault for failing to
follow the Court's instructions about amending his complaint" and that
"defendants wasted time moving to strike Hardy's amended complaints."
*Id*., PageID.850.  But because Hardy had "not engaged in bad faith,
contumacious conduct, perverse resistance of authority, or stubborn
disobedience" and because he had not been warned that he faced
dismissal, the Court recommended that dismissal be denied.  *Id*.,
PageID.850-851.  Judge Ludington adopted that recommendation.  ECF
No. 115.

Soon after the June R&R, Hardy returned to his practice of flooding
the docket with motions and other filings, many of them repetitive or
unauthorized supplements to motions, including for leave to supplement

5

pleadings, to compel discovery, and to determine the sufficiency of defendants' answers.  ECF No. 111; ECF No. 114; ECF No. 117; ECF No. 118; ECF No. 120; ECF No. 125; ECF No. 131; ECF No. 132; ECF No. 139.  And Hardy filed discovery motions despite this Court's order forbidding parties from filing discovery motions without leave of court.  ECF No. 108, PageID.839; ECF No. 125; ECF No. 132.

Defendants' responses to Hardy's motions included requests for reimbursement of the costs associated with responding to Hardy's filings. ECF No. 119, PageID.973; ECF No.133, PageID.1207; ECF No. 134, PageID.1288; ECF No. 136, PageID.1302-1306.  The Court had discretion to grant those requests.  *See* Fed. R. Civ. P. 37(a)(5)(B) (permitting a court to order fees and costs be paid when motion challenging the sufficiency of an answer is denied); Fed. R. Civ. P. 11(c)(4) (permitting sanctions including fees and costs when a party files a frivolous motion); Fed. R. Civ. P. 26(g) (requiring fees and costs be taxed when a party's certification violates the discovery rule without substantial justification).  But during an August 2025 status conference, the Court denied the defendants' requests for reimbursement of their costs.

Rather than imposing sanctions, the Court cautioned Hardy during the August conference that he was clogging the docket with repetitive

6

documents that lacked legal analysis showing that he was entitled to relief. ECF No. 146, PageID.1483.  For example, his requests for the Court to determine the sufficiency of defendants' answers to requests to admit included no legal analysis to guide the requested determination.  *See* ECF No. 125; ECF No. 132.  And Hardy's motions to supplement his complaint included no analysis of how the supplement was allowed under Federal Rule of Civil Procedures 15(d).  *See* ECF No. 117; ECF No. 118.

Hardy admitted during the August status conference that he found the discovery process too complicated and that he needed help because he does not know the law.  ECF No. 146, PageID.1483.  Thus, with Hardy's agreement, the Court again solicited the Federal Pro Se Legal Assistance Clinic to help him navigate the discovery process and scheduled another status conference for September 2025.  *Id.*

But days before the September 2025 status conference, Hardy sent the Court an email objecting to the clinic's continued assistance, claiming that he could "litigat[e] his own case" and needed no help with responding to defendants' motions.  *Id*.  He sent the email without copying defense counsel, although the Court had already warned him not to send ex parte communications.  *Id*., PageID.1483, n.1.

7

Hardy revealed during the status conference that he was upset by the clinic's legal advice.  The Court permitted Director Patek to withdraw as counsel for Hardy, and warned him "that his continued failure to follow procedural rules or orders, and filing of frivolous motions, could result in sanctions, including orders to reimburse defendants and the involuntary dismissal of his complaint."  ECF No. 146, PageID.1483; ECF No. 151, PageID.1501.

In October 2025, the Court denied Hardy's motion for leave to file a third amended complaint (TAC) because of undue delay and futility.  ECF No. 144; ECF No. 179.  One reason that the proposed TAC was futile was because adding the proposed new defendants—Genessee County Jail deputies—would lead to misjoinder under Federal Rule of Civil Procedure 20(a)(2).  ECF No. 179, PageID.1802-1803.  The Court explained:

> In *Price v. City of Elyria*, the court found misjoinder of defendants because, "the claims against the Elyria Defendants concern conduct occurring *before* and *during* the search, whereas the claims against the Lorain County Defendants concern conduct occurring *after* the search. Furthermore, there are no counts in the Second Amended Complaint that are brought against all Defendants collectively." No. 1:24-CV-1707-PAB, 2025 WL 2733667, at *6 (N.D. Ohio Sept. 25, 2025) (emphasis in original).
> Hardy's proposed false arrest claims against [Defendant Shawn] Perry concern conduct *before* and *during* his arrest in Hardy's neighborhood, while the claims against the deputies involve conduct that occurred *after* his arrest when he was in jail. And the only claim Hardy brought collectively against Perry

8

> and the deputies is the conspiracy claim are futile for the
> reasons already stated.

*Id.*

Before the hearing on Hardy's motion for leave and other motions,
the Court had described the authority about misjoinder and ordered Hardy
to be prepared to address the issue.  ECF No. 162, PageID.1717-1719.
But during the hearing, Hardy made no substantive argument to refute the
Court's analysis.  Even so, after the Court rejected his proposed TAC,
Hardy both objected to that order and moved for leave to file a permissive
joinder under Rule 20 to add the deputies identified in the rejected TAC.
ECF No. 184; ECF No. 185.  Both filings lacked analysis showing that
joinder was proper.

Still in October 2025, the Court issued an R&R to grant the Genesse
County defendants' motion for judgment on the pleadings (MJOP).[2]  ECF
No. 180.  Hardy opposed the motion in his response brief and at a hearing,
and he filed objections to the R&R.  ECF No. 144; ECF No. 185.  But
wasting judicial resources, he moved to strike the MJOP under Federal
Rule of Civil Procedure 12(f) *more than a month after* the R&R was issued.
ECF No. 197, PageID.2173.  Hardy's motion to strike was both untimely

---

[2] The parties described the motion as one to dismiss, but it was really a
MJOP under Federal Rule of Civil Procedure 12(c).

and frivolous.  Under Rule 12(f), "[t]he Court may strike from a *pleading* any

redundant, immaterial, impertinent, or scandalous matter."  (Emphasis

added); *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir.

2006).  Neither a response brief nor its supporting exhibits are "pleadings"

under Rule 7(a).  *Lopez v. Trans Union LLC*, No. 25-12733, 2025 WL

2976840, at *2 (E.D. Mich. Oct. 17, 2025) ("A response brief is not a

'pleading' as defined under Rule 7(a)."); *Fox*, 174 F. App'x at 375 ("Exhibits

attached to a dispositive motion are not 'pleadings' within the meaning of

Fed. R. Civ. P. 7(a).").  So the Court denied the motion to strike.  ECF No.

209.

The Court issued another warning to Hardy in October 2025.  Hardy

had "improperly suggested that he had a right to object to deposition

questions," so the Court warned that his continued "violations of discovery

rules may prompt sanctions, up to involuntary dismissal of his complaint."

ECF No. 162, PageID.1722-1724. Rather than heeding the warning, Hardy

moved the Court to recuse itself, accusing it of "repeatedly [bashing him]

over the head with threats of sanctions and dismissal because of errors in

pleadings, acting pro se."  ECF No. 181, PageID.1815.  Denying the

motion, the Court explained:

> Hardy alleges that the Court has engaged in a pattern of
> hostility, but the record shows that the Court solicited the

10

>Federal Pro Se Legal Assistance Clinic to help him prosecute
>his case and entered orders to ensure that he obtained usable
>video evidence during discovery.  ECF No. 146, PageID.1480;
>ECF No. 162, PageID.1721-1722; ECF No. 166,
>PageID.1746.  Hardy rejected the help of the clinic despite
>admitting during an August 2025 status conference that he
>needed help because he did not know the law.  ECF No. 146,
>PageID.1483.  And despite Hardy's pattern of clogging the
>docket with meritless motions, the Court has denied
>defendants' repeated requests for reimbursement of costs
>associated with those filings.  *See* ECF No. 146, PageID.1481-
>1482.

ECF No. 190, PageID.1941.

In November 2025, Hardy filed a meritless motion for summary

judgment (MSJ) under Federal Rule of Civil Procedure 56.  ECF No. 192.

As noted, Hardy claims that Perry arrested him without probable cause.

ECF No. 93, PageID.765-766.  In his MSJ, Hardy failed to set forth

authority showing that his vague and conclusory factual allegations support

that claim.  *Id.*, PageID.2006-2015.  And contradicting the purpose of a

MSJ, he argued that "[m]aterial factual disputes" *preclude* the Court from

granting summary judgment on the issue of qualified immunity.  *Id.*,

PageID.2008.  Hardy did not grasp the fundamental requirement of a MSJ

that the "movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).

11

Hardy also made arguments about claims not raised in his complaint, including that he was subjected to a *Terry*[3] stop without reasonable suspicion and detained too long under *Terry* standards; that he was deprived of equal protection and due process; that Perry withheld exculpatory evidence in violation of *Brady*[4]; and that Perry violated state laws and falsified evidence.  *Id*.  At the summary judgment stage, a plaintiff may not pursue claims not raised in his complaint.  *Spengler v. Worthington Cylinders*, 514 F. Supp. 2d 1011, 1017 (S.D. Ohio 2007); *Edison v. Twp. of Northville*, 752 F. Supp. 3d 808, 822 (E.D. Mich. 2024).

Making matters worse, Hardy's MSJ included fake citations:  *Patel v. City of Ferndale*, 308 F.3d 511, 517 (6th Cir. 2002); *Thompson v. City of Lebanon*, 813 F.3d 318, 323 (6th Cir. 2016); *Spurlock v. Satterfield*, 167 F.3d 915 (5th Cir. 1999); *Wesley v. Rigney*, 860 F.3d 931 (6th Cir. 2017).[5] ECF No. 192, PageID.2007-2008, 2014. The Court suspects that the fake citations result from Hardy using generative artificial intelligence (AI).

> [T]he use of generative AI when drafting legal filings is a very risky practice, as *pro se* litigants and attorneys are still subject to the requirements of Fed. R. Civ. P. 11(b)(2) with respect to

---

[3] Referring to *Terry v. Ohio*, 392 U.S. 1 (1968).

[4] Referring to *Brady v. Maryland*, 373 U.S. 83 (1963).

[5] The Court has not checked all of Hardy's filings for fake citations; there may be other instances of him using them.

12

> pleadings, motions and other documents they sign and submit
> to the Court; even in the absence of bad faith, Rule 11
> sanctions for use of AI generated phantom cases may be
> warranted.

*Smart v. Pro. Grp.*, No. 4:25-cv-11833, 2025 WL 3091139, at *5 (E.D. Mich. Nov. 5, 2025).

Then, after Perry responded to Hardy's MSJ, Hardy was not satisfied with filing a reply brief, as allowed under E.D. Mich. LR 7.1(d)(1).  ECF No. 194; ECF No. 195.  He also burdened the Court and opposing counsel by frivolously moving to strike portions of the response brief under Rule 12(f) "on the basis that the arguments are factually false, immaterial, and without merit."  ECF No. 196, PageID.2159-2161.  Perry responded that Rule 12(f) allows only pleadings to be stricken.  ECF No. 198.  Rather than accepting that his motion to strike under Rule 12(f) was frivolous under the authority Perry cited, Hardy moved to file a 16-page reply brief for his motion to strike, well in excess of the 7-page limit for reply briefs under LR 7.1(d)(3)(B).  ECF No. 202.

And the proposed oversized reply brief includes no arguments showing that Hardy's motion to strike is permitted under Rule 12(f).  Rather, the oversized brief equates to an extra brief in support of Hardy's MSJ in that it focuses on why Perry's affidavit in response to the MSJ should be found inadmissible.  *Id*.  The proposed extra brief is not allowed under LR

13

7.1(d)(1), which authorizes only a response brief and a reply brief to a motion.  *Acceptance Indem. Ins. Co. v. Shepard*, No. 19-cv-12777, 2021 WL 1087416, at *7 (E.D. Mich. Mar. 22, 2021) (defendant violated "Local Rule 7.1(d) by filing more than one brief to accompany her Motion to Set Aside Default.")

Still not done, Hardy filed a "notice of admitted facts and supplemental authority," without leave of court, in support of his MSJ almost a month after Perry responded to the motion, again in violation of LR 7.1(d)(1).  ECF No. 205.  The Court had already warned Hardy about filing unauthorized supplements to motions.  ECF No. 146, PageID.1480 (citing ECF No. 131; ECF No. 139).

In December 2025, Perry moved for leave to file a digital recording of his bodycam video to support his planned MSJ. [6]  ECF No. 207.  Hardy filed a meritless opposition to Perry's motion for leave, arguing that the motion was made after briefing closed.  ECF No. 208, PageID.207-208.  Perry's motion was timely, as the dispositive motions deadline is January 13, 2026.  ECF No. 109.  Hardy also claimed that Perry was "sandbagging" and that his "late-disclosed evidence" should be excluded under Federal Rule of Civil Procedure 37.  ECF No. 208, PageID.2280.  But the record

---

[6] Perry filed his MSJ on January 9, 2026.  ECF No. 210.

shows that the video was not belatedly disclosed, as Hardy has for months repeatedly described Perry's bodycam footage and claimed that it contradicts the police reports.  *See* ECF No. 125, PageID.1103; ECF No. ECF No. 131, PageID.1187; ECF No. 192, PageID.2003; ECF No. 205, PageID.2260.  And in his own MSJ, Hardy cited timestamped portions of the video, confirming that he viewed it.  ECF No. 192, PageID.2003.  Given Hardy's reliance on the bodycam video, his objection to Perry's motion to upload a digital copy of that video is another waste of this Court's judicial resources.

### III.   Analysis

Courts have the power to impose sanctions as "necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts."  *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962).  Exercising that power is increasingly important in the wake of the exploding use of generative AI.  Damien Charlotin, a legal analyst, has tracked more than 500 legal decisions about AI-generated hallucinated content in the United States.[7]  The hallucinated content is "typically fake citations, but also other types of AI-generated

---

[7] *AI Hallucination Cases*, https://www.damiencharlotin.com/hallucinations/?q=&sort_by=-date&states=USA&period_idx=0&page=2 (last visited on January 9, 2025).

arguments." *Id*.; s*ee also Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025) ("It is no secret that generative AI programs are known to 'hallucinate' nonexistent cases, and with the advent of AI, courts have seen a rash of cases in which both counsel and *pro se* litigants have cited such fake, hallucinated cases in their briefs.").

Likely because of the availability of AI, non-prisoner pro se filings have skyrocketed in this district and circuit, and such filings exceed prisoner filings in this district for the first time in recent years.

MIED

| Year | Prisoner Filings | Non Prisoner Pro Se Filing | Non Prisoner Non Pro Se Civil Filings | Grand Total |
|---|---|---|---|---|
| FY2025 | 691 | 815 | 2440 | 3946 |
| FY2024 | 675 | 542 | 2233 | 3450 |
| FY2023 | 665 | 431 | 2201 | 3297 |
| FY2022 | 668 | 359 | 2072 | 3099 |
| FY2021 | 739 | 285 | 2027 | 3051 |

MIED

| Year | Prisoner Filings | Non Prisoner Pro Se Filings | Non Prisoner Non Pro Se Filings | Grand Total |
|---|---|---|---|---|
| FY2025 | 17.50% | 20.65% | 61.83% | 100% |
| FY2024 | 19.57% | 15.71% | 64.72% | 100% |
| FY2023 | 20.17% | 13.07% | 66.76% | 100% |
| FY2022 | 21.56% | 11.58% | 66.86% | 100% |
| FY2021 | 24.22% | 9.34% | 66.44% | 100% |

Rest of the 6th Circuit

| Year | Prisoner Filings | Non Prisoner Pro Se Filing | Non Prisoner Non Pro Se Civil Filings | Grand Total |
|------|------------------|----------------------------|---------------------------------------|-------------|
| FY2025 | 3315 | 2212 | 9873 | **15400** |
| FY2024 | 3234 | 1531 | 12468 | **17233** |
| FY2023 | 3070 | 1307 | 11063 | **15440** |
| FY2022 | 2833 | 1118 | 11178 | **15129** |
| FY2021 | 2717 | 1215 | 13536 | **17468** |

Rest of the 6th Circuit

| Year | Prisoner Filings | Non Prisoner Pro Se Filing | Non Prisoner Non Pro Se Civil Filings | Grand Total |
|------|------------------|----------------------------|---------------------------------------|-------------|
| FY2025 | 21.53% | 14.36% | 64.11% | **100%** |
| FY2024 | 18.77% | 8.88% | 72.35% | **100%** |
| FY2023 | 19.88% | 8.47% | 71.65% | **100%** |
| FY2022 | 18.73% | 7.39% | 73.88% | **100%** |
| FY2021 | 15.55% | 6.96% | 77.49% | **100%** |

The office of the Eastern District of Michigan's Court Administrator provided the data in the above charts.  The "filings" in the charts reflect the number of complaints rather than the number of documents filed by pro se plaintiffs. But the Court has observed that non-prisoner pro se plaintiffs are increasingly likely to clog dockets with frivolous and improper documents.

The sharp increase in frivolous pro se filings burdens the Court.  *See In re McDonald*, 489 U.S. 180, 184-185 (1989) ("Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources.  A part of the Court's responsibility is to see that these resources are allocated in a way that

17

promotes the interests of justice."); *U.S. ex rel Verdone v. Circuit Court for Taylor Cnty.*, 73 F.3d 669, 671 (7th Cir. 1995) ("Frivolous, vexatious, and repeated filings by pro se litigants interfere with the orderly administration of justice by diverting scarce judicial resources from cases having merit and filed by litigants willing to follow court orders."); *Thanedar v. Time Warner, Inc.*, 352 F. App'x. 891, 900 (5th Cir. 2009) ("[i]t is well-settled that a plaintiff's pro se status does not give him a license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.").

Courts and opposing counsel are also burdened by the careless use of AI by pro se filers.

> Litigants who simply file the material that AI tools generate, without carefully reviewing it first for accuracy, have the potential to swamp courts with what appear at first glance to be legal arguments built on law and precedent, but which are in fact nothing of the sort. And not only are these problems in their own right, but they also heighten the two concerns the Court highlighted above—that defendants will be forced to spend more time and incur more costs parsing through copious baseless filings to defend an action, and that Courts will waste precious time doing the same in ruling on motions and moving matters along.

*Muhammad v. Gap Inc.*, No. 2:24-cv-3676, 2025 WL 1836657, at *14 (S.D. Ohio July 3, 2025).  And while monetary sanctions under Rule 11 may effectively discourage attorneys from carelessly relying on AI, imposing a

monetary sanction on plaintiffs proceeding in forma pauperis (IFP) would likely be futile.  *See In re McDonald*, 489 U.S. 180, 184 (1989) ("[P]aupers filing *pro se* petitions are not subject to the financial considerations—filing fees and attorney's fees—that deter other litigants from filing frivolous petitions."); *Hoskins v. Dart*, 633 F.3d 541, 544 (7th Cir. 2011) ("Monetary sanctions are generally not as effective against a pro se plaintiff proceeding as a pauper, as Hoskins does here."); *Simmons v. Gilmore*, No. 2:17-cv-00996, 2020 WL 4016331, at *4 (W.D. Pa. July 16, 2020) ("Imposing a monetary sanction on Simmons would be ineffective as he appears to be impecunious.").  Imposing monetary sanctions on a pro se plaintiff who has a history of clogging the docket would also only "provoke further litigation." *Jones v. Michigan Dep't of C.R.*, No. 18-11934, 2020 WL 4812700, at *2 (E.D. Mich. Feb. 7, 2020).

So rather than imposing monetary sanctions, the better options for sanctions against pro se plaintiffs proceeding IFP who engage in bad faith conduct include: (1) involuntary dismissal with prejudice; (2) revoking the plaintiff's IFP status;[8] and (3) enjoining the plaintiff from filing lawsuits in

---

[8] See *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003); *Coppedge v. United States*, 369 U.S. 438, 445 (1962); *Molter v. Trinity Health*, ___ F.Supp.3d ___, 2025 WL 3295122, at *4 (E.D. Mich. Nov. 26, 2025).

this district without leave of court.[9]  Revoking Hardy's IFP status is unlikely

to be effective because, in *Hardy v. City of Flint*, he paid the filing fee after

his IFP application was denied.  Case No. 22-cv-11351, ECF No. 4.

The Court instead recommends that Hardy's complaint be dismissed

under Rule 41(b) and that he be enjoined from filing more lawsuits without

leave of court.

### *Dismissal under Rule 41(b)*

Rule 41(b) authorizes courts to involuntarily dismiss an action with

prejudice "[i]f the plaintiff fails to prosecute or to comply with these rules or

a court order."  A court also has the inherent authority to sanction bad-faith

conduct, "derive[d] from its equitable power to control the litigants before it

and to guarantee the integrity of the court and its proceedings."  *First Bank*

*of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir.

2002).  "A primary aspect of [a court's inherent authority] is the ability to

fashion an appropriate sanction for conduct which abuses the judicial

process."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

---

[9] When the pro se plaintiffs have electronic document upload privileges, revoking those privileges is another sanction to consider.  Hardy does not have those privileges.  See *Evans v. Robertson*, No. 24-13435, 2025 WL 3243458, at *3-4 (E.D. Mich. Nov. 20, 2025) (revoking parties' pro se electronic upload privileges as sanctions after parties filed briefs with factitious citations).

Although dismissal is a severe sanction, it is within a court's discretion.  *Bradley J. Delp Revocable Tr. v. MSJMR 2008 Irrevocable Tr.*, 665 F. App'x 514, 520 (6th Cir. 2016).  Four factors guide whether dismissal is proper:

> (1) whether the party's conduct was due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Id.* at 520-21 (cleaned up).[10]  Although no one factor is dispositive, bad faith is the preeminent consideration.  *Fharmacy Records v. Nassar*, 379 F. App'x 522, 524 (6th Cir. 2010).  And while pro se litigants are generally entitled to a degree of leniency, "pro se filings do not serve as an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."  *Porton v. SP One, Ltd.*, No. 6:15-cv-566–Orl-40KRS, 2015 WL 1648893, at *2 (M.D. Fla. Apr. 13, 2015) (cleaned up);

---

[10] These factors are the same whether proceeding under Federal Rules of Civil Procedure 16(f), 37, 41(b), or the Court's inherent authority.  *Mager v. Wisc. Cent. Ltd.*, 924 F.3d 831, 837 (6th Cir. 2019); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994).

*see also Simmons v. Henry Ford Health Sys.*, No. 18-cv-14058, 2023 WL 1767473, at \*4 (E.D. Mich. Feb. 3, 2023).

Applying these factors, dismissal is proper here.

For the ***first factor***, to qualify as "bad faith, willfulness, or fault," a party's conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001) (quoting *Shepard Claims Serv. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986)).  There must be "a clear record of delay or contumacious conduct" that is "perverse in resisting authority and stubbornly disobedient." *Carpenter v. City of Flint*, 723 F.3d 700, 704-05 (6th Cir. 2013) (cleaned up).  The type of conduct to which the bad-faith standard applies includes a pattern of violating court orders; "delaying or disrupting the litigation"; or "hampering enforcement of a court order."  *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (cleaned up); *Simmons*, 2023 WL 1767473, at \*4.

As described above, despite the Court's best efforts, Hardy has continued to clog the docket with frivolous and improper filings.  He has been stubbornly resistant to the Court's orders, persistently pursing relief that has already been rejected.  For example, after the Court recommended that the Genessee County defendants be dismissed, Hardy

22

repackaged arguments he had already made by filing a motion to strike. After the Court rejected his proposed TAC because adding jail deputies would result in misjoinder, he filed a motion for permissive joinder asking to add the same jail deputies. And after being warned that he had no right to file supplemental briefs without leave of court, he continued to do so. Hardy acknowledged that he does not understand the law, but he refused the assistance of the Federal Pro Se Legal Assistance Clinic because he did not like its advice.

Hardy's failure to learn and follow basic court rules is notable because "this is not his first rodeo"; he is "no ordinary pro se litigant" given his "share of experience" in federal courts. *Muhammad*, 2025 WL 1836657, at *8. He has been filing lawsuits since 1998, and a Bloomberg Law search shows that he has filed 42 civil cases in this district and in the Western District of Michigan (see attached).

Hardy's pattern of vexatious litigation may stem from mental illness. In 2011, he was diagnosed as having bipolar disorder with severe psychotic features. ECF No. 194, PageID.2141. He is disabled and receives Supplemental Security Income. ECF No. 2, PageID.12-13. And though he describes himself as a "65-year-old male who suffers in memory lost, paranoia, schizoaffective and bipolar disorders," he acknowledges that

he "stopped taking his psychotropic medications about 4 years ago."  ECF

No. 88, Page.725-726.  Hardy's paranoia might also explain his repeated

calls to 911 complaining about his neighbor(s) possessing a firearm, as

well as the responding officials' apparent failure to find wrongdoing on the

part of the neighbor(s).

Whatever the cause, Hardy has been stubbornly disobedient of court

rules and orders.  The bad faith factor is satisfied.

Addressing the ***second factor***, defendants have been prejudiced by

having to waste time and resources filing responses and motions to strike

Hardy's endless, meritless, and repetitive filings.  The Court resisted

defendants' efforts in April 2025 to dismiss Hardy's complaint based on his

repeated failures to follow orders about his proposed amended complaints.

ECF No. 83; ECF No. 110; ECF No. 115.  In the R&R to deny the motion to

dismiss, the Court found that "Hardy was at fault for failing to follow the

Court's instructions about amending his complaint" and that "defendants

wasted time moving to strike Hardy's amended complaints."  ECF No. 110,

PageID.850.  But the Court found at the time that bad faith and a prior

warning were lacking.  *Id*., PageID.850-851.

After defendants' motion to dismiss was denied, Hardy intensified his

practice of clogging the docket with repetitive, unauthorized, and meritless

24

documents, multiplying the prejudice to defendants.  The prejudice Hardy has caused defendants warrants dismissal of this case.

For the **third factor**, Hardy has been warned repeatedly that he faced dismissal of his complaint if he continued to fail to follow procedural rules or orders, or file frivolous motions.  ECF No. 146, PageID.1483; ECF No. 151, PageID.1501; ECF No. 162, PageID.1722-1744.  Rather than heeding those warnings, he moved for the Court to recuse itself, accusing it of "repeatedly [bashing him] over the head with threats of sanctions and dismissal because of errors in pleadings, acting pro se."  ECF No. 181, PageID.1815.  Hardy's refusal to respect the Court's warnings supports dismissal of his complaint.

And as to the **fourth factor**, the Court has considered other sanctions, but for the reasons stated above, finds that monetary sanctions and revoking his IFP status would be ineffective.

### *Filing Injunction*

"There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation."  *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998).  There is nothing wrong with an order that "restrains not only an individual litigant from repeatedly filing an identical complaint, but that places limits on a

reasonably defined category of litigation because of a recognized pattern of repetitive, frivolous, or vexatious cases within that category." *Id.*

To determine whether a permanent injunction is warranted, courts consider:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?, (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Kersh v. Borden Chem., a Div. of Borden, Inc.*, 689 F. Supp. 1442, 1450 (E.D. Mich. 1988) (cleaned up).  Application of these factors supports the issuance of an injunction.

Addressing the ***first consideration***, Hardy has an extensive history of filing meritless lawsuits.  Assessing Hardy's motives in pursuing litigation, the ***second consideration***, the Court believes that his litigious conduct stems from his mental illnesses and the ample time that he has on his hands because of his disability.  The ***third consideration*** highlights that filing injunctions are especially appropriate for unrepresented litigants like Hardy with histories of filing repetitive, frivolous, or vexatious lawsuits.

26

*See also Gilmore-Bey v. Schneider*, No. 24-cv-10689, 2025 WL 1618975, at *7 (E.D. Mich. May 29, 2025); *Jones*, 2020 WL 4812700, at *2; *Johnson v. Bell*, No. 2:15-cv-0048, 2016 WL 5339599, at *5 (W.D. Mich. Jan. 15, 2016).

As to the ***fourth consideration***, Hardy has caused needless expenses to other parties and has unnecessarily burdened the courts and personnel in this district and the Western District of Michigan.  And the prejudice other parties experience in having to respond to Hardy's frivolous motions is ongoing in other cases.  For example, in *Hardy v. Genessee County*, he has moved for judgment on the pleadings under Rule 12(c), arguing that the Court "must accept all factual allegations *in the complaint as true*."   Case No. 24-cv-11190, ECF No. 58, PageID.393 (emphasis added).  But when considering a Rule 12(c) motion, the Court must accept as true "all well-pleaded material allegations of the pleadings *of the opposing party*."  *Moderwell v. Cuyahoga Cty.*, 997 F.3d 653, 659 (6th Cir. 2021) (cleaned up, emphasis added).  Despite filing dozens of lawsuits over decades, Hardy does not understand the basic rules of civil procedure.  For the ***fifth consideration***, no other sanctions will protect the Court and other parties from Hardy's litigiousness.

27

When it comes to the ***ultimate question***, "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties," *Kersh*, 689 F. Supp. at 1450 (E.D. Mich. 1988), a filing injunction is appropriate even when the vexatious litigation has occurred within a single lawsuit. *See Jones*, 2020 WL 4812700, at *2 ("Although Jones has not filed a series of duplicative lawsuits, he has filed a multitude of motions, amendments, and requests that reflect his refusal to accept that his lawsuit has been dismissed."). In this case alone, Hardy has filed a multitude of motions, proposed amendments to his complaint, and unauthorized supplements, and has refused to accept the Court's decisions in orders and R&Rs. And Hardy's history of filing 42 total civil lawsuits is extraordinary. There can be no question that Hardy will continue to abuse the judicial process and unnecessarily burden opposing parties if no filing injunction is imposed.

Thus, an injunction should be entered against Hardy that is "sufficiently tailored to the vice so as not to infringe upon the litigator's right of access to the courts." *Ortman v. Thomas*, 906 F. Supp. 416, 422 (E.D. Mich. 1995). The injunction should preclude him from:

- filing any new federal actions in the Eastern District of Michigan without obtaining leave of court, and order that any action filed without leave be stricken; and

- filing any new action in "any court whatsoever (state or federal) against any state or federal judge, officer or employee, or court employee, for actions taken in the course of their official duties as a judge, officer, employee, or court employee," without leave of court. *Kersh*, 689 F. Supp. at 1452.

To obtain leave to file a new action, Hardy should be ordered to:

- file a "Motion Pursuant to Court Order Seeking Leave to File" with any proposed complaint;

- attach as an exhibit to that motion a declaration under 28 U.S.C. § 1746, or a sworn affidavit, certifying that his complaint is not prohibited by the permanent injunction, and that it is not frivolous or made in bad faith;

- identify and list in a second exhibit: (1) the full caption of every suit which has been previously filed by him or on his behalf in any court against every defendant in the suit that he wishes to file, and (2) the full caption of every suit which he has currently pending;

- provide, in a third exhibit, a copy of each complaint covered by the preceding paragraph and a certified record of its disposition. He must serve a copy of this order on each defendant if leave to file is granted; and

- attach the order granting the permanent injunction to any new action that he may file in any court.

The injunction should state that it does not impair Hardy's ability to defend himself in any criminal action.  Finally, the Court should retain jurisdiction to modify this injunction as necessary where circumstances may change.[11]

## IV.   Conclusion

The Court **RECOMMENDS** that this case be **DISMISSED WITH PREJUDICE** under Rule 41(b), and that Hardy be enjoined from filing new actions as described above.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 12, 2026

---

[11] This recommended injunction borrows heavily from, and is supported by, *Kersh*, 689 F. Supp at 1452-53, and *Shophar v. Gorski*, No. 17-cv-13322, 2018 WL 4442268, at *5 (E.D. Mich. Sept. 18, 2018).

30

## <u>NOTICE TO THE PARTIES ABOUT OBJECTIONS</u>

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 12, 2026.

s/Davon Allen
DAVON ALLEN
Case Manager